UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

– v. –

JAMES BAZEMORE,

                    Defendant.

**OPINION AND ORDER**

20 Cr. 573 (ER)

Ramos, D.J.:

On February 27, 2020, parole officers conducted a home visit of the residence of James Bazemore and recovered a small loaded silver firearm and ammunition in several different calibers.  Approximately seven minutes later, New York Police Department ("NYPD") officers arrived and arrested Bazemore.  On July 22, 2020, a complaint was filed, charging James Bazemore with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g).  On October 26, 2020, a grand jury returned an indictment.  Doc. 10.  Pending before this Court is Bazemore's motion to suppress all physical evidence obtained from the search and his pre- and post-*Miranda* statements following his arrest.  In the alternative, Bazemore seeks a hearing.

For the reasons set forth below, the motion is denied.

## I.   BACKGROUND

On February 3, 2005, Bazemore was convicted of first-degree robbery in violation of N.Y. Pen. Law § 160.15(4) and sentenced to fifteen years' imprisonment and five years' post-release supervision by New York State Supreme Court, Criminal Term.  Doc. 1 ¶ 3; Doc 21-1 at 3.  On August 3, 2017, Bazemore was released on post-release supervision.  Doc. 21-1 at 3.  As part of the conditions of his release, he agreed, in relevant part:

4.  I will permit my Parole Officer to visit me at my residence and/or place of employment and I will permit the search and inspection of my person, residence and property.

. . .

8.  I will not behave in such a manner as to violate the provisions of any law to which I am subject which provide for a penalty of imprisonment, nor will my behavior threaten the safety or well-being of myself or others.

9.  I will not own, possess, or purchase any shotgun, rifle or firearm of any type without the written permission of my Parole Officer.

. . .

11.  I will not use or possess any drug paraphernalia or use or possess any controlled substance without proper medical authorization.

*Id*.

On January 24, 2020, Bazemore's relative filed a complaint with the NYPD accusing Bazemore of assault and alleging that Bazemore had a gun in his hand (the "January 24 Incident"). Doc. 21-2 at 2–4.  On February 6, 2020, Bazemore was arrested by NYPD officers from the 40th Precinct in connection with the January 24 Incident. *Id*. at 5–7.  He was subsequently released on his own recognizance. Doc. 22 at 4.  Bazemore attests that he had a discussion with his parole officer about this matter. Doc. 17 at 1 ¶ 5.

At approximately 7:00 AM on February 27, 2020, parole officers conducted a home visit and search of Bazemore's apartment. Doc. 1 ¶ 3.  After one parole officer secured and handcuffed Bazemore, parole officers searched his bedroom and found a small loaded silver firearm and ammunition in several different calibers.[1]  Doc. 1 ¶ 3.  The parole officers then radioed NYPD officers from the 43rd Precinct, who arrived about seven minutes later. *Id*.  The parties dispute whether only the parole officers conducted the search of the apartment, as the

---

[1] The indictment mentions that these items were found "among other things."  Doc. 1 ¶ 3.  In their opposition papers, the Government specifies the items found:  a loaded 9mm caliber Arcadia Machine & Tool Backup pistol, additional ammunition, narcotics, and paraphernalia for packaging and selling narcotics. Doc. 21 at 4.  In the indictment, the Government indicates that the loaded pistol was later determined to have been reported stolen. Doc. 1 ¶ 4.

2

Government contends, or whether police officers also participated in the search, as Bazemore asserts. Both parties concede that at some point while at the apartment, in footage captured by a body-worn camera, a parole officer said to Bazemore, "So listen, you've been a perfect gentleman. I'm going to document that regarding Parole-wise, so just [unintelligible] . . . ." Doc. 21 at 4. In response, Bazemore stated, "I don't care. You got a gun. I'm going away. It's over." *Id*. The NYPD officers placed Bazemore under arrest and transported him to the 43rd Precinct for processing. Doc. 1 ¶ 3. Neither party describes any statements that Bazemore may have made while he was being transported, although Bazemore asserts that there were various questions and conversations between the police officers and himself during the ride. Doc. 22 at 2.

At approximately 12:08 PM, at the precinct, NYPD officers issued a *Miranda* warning to Bazemore and conducted a post-arrest interview. Doc. 1 ¶ 3. There, Bazemore provided incriminating statements to police officers, including but not limited to: "[i]t's my gun," "I got the gun from Tiger," and "[m]y DNA is on the gun I told you I touched it." *Id*. On February 28, 2020, the Bronx District Attorney's Office charged Bazemore with firearms and narcotics offenses, as well as with violation of his post-release supervision. Doc. 21 at 5. Bazemore was incarcerated in state custody from February 27, 2020 to July 23, 2020. *Id*.

On July 22, 2020, the Government filed the criminal complaint in this Court. Doc. 1. On July 23, 2020, Bazemore was arrested and taken into federal custody. Doc. 3; Doc. 21 at 6. On October 26, 2020, the indictment was filed. Doc. 10. Bazemore was arraigned via teleconference on December 1, 2020. Doc. 18 at 6:25–7:14.

In the instant motion, Bazemore moves to suppress all physical evidence and statements. Doc. 17. Bazemore argues that the parole officers' search was a ruse for the NYPD's warrantless

search of his home, which was conducted for the purpose of uncovering evidence concerning the January 24 Incident.  Bazemore also moves to suppress all statements made to law enforcement at his apartment, while being transported from his apartment, and at the 43rd Precinct.  In particular, Bazemore argues that the parole officer's communications, made before Bazemore had been given *Miranda* warnings, were intended to elicit an incriminating response.  Bazemore further argues that his post-*Miranda* statements must be suppressed because he had already given incriminating statements pre-*Miranda* and thus was induced to provide further incriminating statements post-*Miranda*.  The Government opposes Bazemore's motion, arguing that the search was permissible under the terms of his post-release supervision and the parole officers' reasonable suspicion that Bazemore was in violation of those terms.  The Government further argues that Bazemore's statement to the parole officer at the apartment was unprompted, and that Bazemore does not offer any valid basis why his *Miranda* warning was faulty nor why his subsequent statements to law enforcement were not knowing and voluntary.  In reply, Bazemore asserts that he will withdraw his motion with respect to the statements made at his home if the Government concedes that it will not use them.  To date, the Government has not conceded this issue.

## II.   DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE

### A.   Legal Standard

#### *1. Warrantless Search*

The Fourth Amendment protects people from "unreasonable searches and seizures."  U.S. Const. amend. IV.  The "touchstone" of the Fourth Amendment is reasonableness, *United States v. Lambus*, 897 F.3d 368, 402 (2d Cir. 2018), which is determined by "the totality of the circumstances, including the nature and purpose of the search and the extent to which the search intrudes upon reasonable privacy expectations," *Grady v. North Carolina*, 575 U.S. 306, 310

(2015).  Reasonableness in the totality of the circumstances "'is determined by assessing, on the one hand, the degree to which [the search] intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" *Samson v. California*, 547 U.S. 843, 848 (2006) (quoting *United States v. Knights*, 534 U.S. 112, 118–19 (2001)).

"Probationers, parolees, and persons subject to supervised release have 'significantly diminished' expectations of privacy." *Lambus*, 897 F.3d at 402 (citing *Samson*, 547 U.S. at 848–50). This diminished expectation of privacy is even less "where . . . the parolee, as a condition of being released from prison, has expressly consented to having his residence searched by his parole officer." *United States v. Massey*, 461 F.3d 177, 179 (2d Cir. 2006). However, under New York law, a parolee's standard release certificate should "'not . . . be taken as an unrestricted consent to any and all searches.'" *United States v. Newton*, 369 F.3d 659, 665 (2d Cir. 2004) (quoting *People v. Huntley*, 371 N.E.2d 794, 798 (N.Y. 1977)). Rather, whether the warrantless search is constitutionally prohibited "turn[s] on whether the conduct of the parole officer was rationally and reasonably related to the performance of the parole officer's duty." *Lambus*, 897 F.3d at 403 (quoting *Huntley*, 371 N.E.2d at 797). Where a parole officer has "reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity," a search is reasonable, and a warrant is unnecessary. *Knights*, 534 U.S. at 121. An officer has a reasonable suspicion when he or she is "aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion." *United States v. Brignoni-Ponce,* 422 U.S. 873, 884 (1975). This reasonable suspicion requirement may be satisfied where an officer has knowledge of allegations that would constitute parole violations. *See, e.g.*, *United States v. Barner*, 666 F.3d 79, 85 (2d Cir. 2012) (holding that the parole officer receiving

information of the parolee possessing and firing a gun satisfied the reasonable relationship requirement of *Huntley*).  The Second Circuit has recognized that the obligations to "investigate whether a parolee is violating the conditions of his parole," *United States v. Reyes*, 283 F.3d 446, 459 (2d Cir. 2002) (internal citations omitted), and "detect and prevent parole violations so as to protect the public from the commission of further crimes" are parts of a parole officer's duty, *Newton*, 369 F.3d at 666 (internal citation and quotation marks omitted).  The Second Circuit has also recognized that, to accomplish such duties, "some coordination between parole officers and law enforcement officers is often necessary, and the fact that a new prosecution may ensue is not a sign that the parole officer was not pursuing his normal duties." *Lambus*, 897 F.3d at 404.  As the *Reyes* court notes:

> A probation officer is responsible for ensuring that a convicted person serving a term of federal supervised release is not violating the conditions of his supervised release, which includes verifying whether the supervisee is dealing in drugs or committing other crimes.  Law enforcement officers are yoked with similar responsibilities to root out crime in the public at large.  Accordingly, the objectives and duties of probation officers and law enforcement personnel are unavoidably parallel and are frequently intertwined.

283 F.3d at 463 (internal citations omitted).

### 2. *Evidentiary Hearing*

The Second Circuit has determined that "a court must ordinarily hold [a]n evidentiary hearing on a motion to suppress . . . if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." *United States v. Durand*, 767 F. App'x 83, 87 (2d Cir. 2019) (internal citations and quotation marks omitted).  This must be shown "by an affidavit of someone with personal knowledge of the underlying facts" which establish that "disputed issues of material fact exist." *United States v. Viscioso*, 711 F. Supp. 740, 745 (S.D.N.Y. 1989) (internal

quotation marks and citations omitted).  An evidentiary hearing will not be required "if the defendant's statements are general, conclusory or based on conjecture."  *Id*.  Courts in this district "have broad discretion when deciding whether or not to hold a suppression hearing." *United States v. Shamsideen*, No. 03 Cr. 1313 (SCR), 2004 WL 1179305, at *9 (S.D.N.Y. Mar. 31, 2004).

## B.    Discussion

Bazemore argues, in reply, that the Government has not sufficiently established that the parole officers had "'reasonable suspicion to believe that criminal activity ha[d] occurred or [wa]s about to occur.'"  *United States v. Washington*, No. 12 Cr. 146 (JPO), 2012 WL 5438909, at *6 (S.D.N.Y. Nov. 7, 2012) (quoting *United States v. Tehrani*, 49 F.3d 54, 58 (2d Cir. 1995)). Bazemore additionally notes that the parole officers waited over a month after he allegedly assaulted a family member before conducting a home visit and that the Government has not alleged any facts which indicate that the parole officers were actually aware of either the January 24 Incident or of his arrest on February 6.

As the parole officers were aware of the January 24 Incident, which involved Bazemore allegedly violating the conditions of his parole, Bazemore's arguments cannot stand.  Bazemore himself concedes that the parole officers were aware of the January 24 Incident prior to their home visit search and of his February 6 arrest for possession of a weapon.  Doc. 17 at 5.  In his affidavit, Bazemore avers:

> 5.  Parole Officer Damaris searched my apartment with the NYPD as a result of a conversation I had with her concerning my criminal matter.

*Id*. at 1 ¶ 5.

Bazemore has therefore failed to meet his burden that there are disputed issues of material fact as to the parole officers' reasonable suspicion, based on their undisputed knowledge

of his arrest.  *See, e.g.*, *Barner*, 666 F.3d at 85 (holding that it was "clearly reasonable" for a parole officer to conduct a search where the parole officer had received information that defendant had a gun and used it in an altercation, and that the parole officer's conduct was "substantially related to the performance of duty in the particular circumstances").  The parole officer's awareness of the January 24 Incident satisfies the *Huntley* reasonable relationship requirement.

Bazemore cites *People v. Mackie*, in which the New York Appellate Division held that the evidence from a warrantless search conducted by the defendant's parole officer was inadmissible, although that case is distinguishable because the defendant's parole officer in *Mackie* had no reason to suspect that the defendant had violated any condition of his parole.  77 A.D.2d 778, 779 (N.Y. App. Div. 1980).

Bazemore also argues that the parole officers were improperly serving as a conduit for the NYPD.  While other Circuits have recognized such a "stalking horse" theory as a basis for a Fourth Amendment violation, the Second Circuit in *Reyes* has rejected it.  *Reyes*, 283 F.3d at 464 ("Consequently, the notion of the 'stalking horse' stands in stark contrast to the law governing the long-established practices of probation and parole officers.").  Defendant's argument that the parole officers were serving improperly as a conduit for the NYPD therefore has no merit.  The *Reyes* court additionally held that, even if the "stalking horse" theory were meritorious, cooperation among different enforcement agencies and parole departments was permitted "so long as the probation officers are pursuing legitimate probation-related objectives."  *Id.* (internal citation omitted).  In the instant case, since the parole officers were aware of the January 24 Incident and Bazemore's subsequent arrest, any cooperation with NYPD to investigate whether

Bazemore was violating the conditions of his parole would satisfy the "legitimate probation-related objective."

Bazemore further alleges that the January 24 Incident was too stale to serve as a factor for the reasonableness of the search based on the amount of time between the January 24 Incident and the search. The Second Circuit has held that the "principal factors in assessing whether or not the supporting facts have become stale are the age of those facts and the nature of the conduct alleged to have violated the law," a determination to "be made on the basis of the facts of each case." *Diamondstone v. Macaluso*, 148 F.3d 113, 124 (2d Cir. 1998) (internal quotation marks and citations omitted). While there is no bright line for defining staleness, courts in this Circuit have generally found that the "information necessary to support a finding of probable cause should be no older than one year." *United States v. Reyes*, 922 F. Supp. 818, 827 (S.D.N.Y. 1996) (collecting cases); *see also United States v. Mouzon*, No. 16 Cr. 284 (CM), 2016 WL 7188150, at *6 (S.D.N.Y. Dec. 2, 2016) (collecting cases). Additionally, the search was of a home, "a place in which evidence of past criminal activity is likely to be found." *Reyes*, 922 F. Supp. at 826. In the instant case, only five weeks elapsed between the January 24 Incident and the search, and only three weeks passed between the subsequent February 6 arrest and the search. Additionally, the item purportedly sought, a firearm Bazemore allegedly used to assault a family member, is "the type[ ] of property that can reasonably be expected to be kept in a [d]efendant's residence for an extended period of time." *United States v. Harris*, No. 19 Cr. 746 (NSR), 2021 WL 1512724, at *4 (S.D.N.Y. Apr. 16, 2021). As such, the Court finds that the time that elapsed between the January 24 Incident and resulting arrest and the search did not render the facts underlying the search stale.

Therefore, Bazemore's motion to suppress the physical evidence collected as a result of the warrantless search is denied.  Because there are no material factual issues in dispute as to the basis for the parole officers' search, Bazemore's motion for an evidentiary hearing is also denied.

## III.  DEFENDANT'S MOTION TO SUPPRESS STATEMENTS

### A.  Legal Standard

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  In the seminal case *Miranda v. Arizona*, the Supreme Court held that police cannot interrogate a suspect in custody without first warning the person "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires," known as a person's *Miranda* rights.  384 U.S. 436, 479 (1966).  These warning requirements "apply only to 'custodial interrogation.'"  *Newton*, 369 F.3d at 669 (quoting *Miranda*, 384 U.S. at 444).  The Second Circuit has held that "[t]he test for custody is an objective one:  whether a reasonable person in defendant's position would have understood himself to be subjected to the restraints comparable to those associated with a formal arrest."  *Id*. at 671 (internal quotation marks and citation omitted).  Further, "interrogation" under *Miranda* does not only refer to express questioning, but also to "'any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect.'"  *United States v. Stroman*, 420 F. App'x 100, 102 (2d Cir. 2011) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)).  On a motion to suppress statements, Bazemore bears the burden of showing that he was subject to custodial interrogation.  *United States v. Pena*, 961 F.2d 333, 336 (2d Cir. 1992) ("The defendant seeking suppression bears the burden upon [the] issue.").

A "spontaneous utterance" from a defendant in custody prior to being *Mirandized* is admissible if it is "given freely and voluntarily without any compelling influence" and is "not the result of police interrogation." *United States v. Compton*, 428 F.2d 18, 22 (2d Cir. 1970).

**B.     Discussion**

*1.   Non-Mirandized Statements*[2]

In the instant action, Bazemore seeks to suppress all statements he made to law enforcement at his residence, on the way from his residence to the 43rd Precinct, and at the 43rd Precinct. Bazemore disagrees that his non-*Mirandized* statements were spontaneous utterances. He further asserts that a suppression hearing is necessary to determine whether his non-*Mirandized* statements were induced by interrogation-like conduct on the part of the officers or whether they were spontaneous utterances. The Government proffers only one non-*Mirandized* statement, when Bazemore said, "I don't care. You got a gun. I'm going away. It's over." Based on the body-worn camera footage, Bazemore's statement was responsive to a parole officer saying, "So listen, you've been a perfect gentleman. I'm going to document that regarding Parole-wise, so just . . . (unintelligible)." The Government contends that Bazemore's statement was a spontaneous utterance and therefore admissible. *See United States v. Fiseku*, No. 15 Cr. 384 (PAE), 2015 WL 7871038 (S.D.N.Y. Dec. 3, 2015), at *15 ("[A] spontaneous or volunteered utterance by a suspect, even though in custody and having been subjected to prior questioning, is

---

[2] Bazemore also moves to suppress his statements made to law enforcement under the Sixth Amendment, presumably the Sixth Amendment right to counsel. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. However, the Sixth Amendment right to counsel "attaches only at or after the time that adversary judicial proceedings have been initiated . . . ." *Kirby v. Illinois*, 406 U.S. 682, 688 (1972). The *Miranda* right to counsel is both "broader . . . because it relates to interrogation regarding *any* suspected crime and attaches whether or not the 'adversarial relationship' produced by a pending prosecution has yet arisen" and "narrower . . . because it relates only to custodial interrogation" than the Sixth Amendment right to counsel. *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991). As Bazemore's statements were made prior to adversary judicial proceedings being initiated, only the Fifth Amendment is implicated in this motion.

not the product of custodial interrogation, and is thus not subject to suppression under *Miranda*." (citing *United States v. Colon*, 835 F.2d 27, 28, 30 (2d Cir. 1987))).

While Bazemore disputes that the statement was a spontaneous utterance, the facts surrounding the statement in question as captured by the body-worn camera footage are not in dispute.  Moreover, nothing proffered by Bazemore is "sufficiently definite, specific, detailed, and nonconjectural" to show that his statement was in response to interrogation, or its functional equivalent.  It cannot be concluded from the intelligible portion of the parole officer's statement that he could have known that his statement was "reasonably likely to elicit an incriminating response" from Bazemore.  *Innis*, 446 U.S. at 301.

Accordingly, Bazemore's motion to suppress his non-*Mirandized* statements is denied.

*2.  Post-Mirandized Statements*

Bazemore argues that his statements made to law enforcement after being *Mirandized* at the 43rd Precinct are tainted by his previous inculpatory statements.  Since there was no coercion, or "taint," to Bazemore's non-*Mirandized* statements, there is no basis to suppress his post-*Miranda* statements, so that motion is also denied.

## IV.    CONCLUSION

For the reasons set forth above, Defendant's motion is denied.  The Clerk of Court is respectfully directed to terminate the motion, Doc. 17.

It is SO ORDERED.

Dated:    April 30, 2021
          New York, New York

_____
          Edgardo Ramos, U.S.D.J.